Good morning. I understand that everyone is here accordingly. We will dispense with the calling of the calendar and we'll hear the first case, Bayou v. NBC Sports. Hello. Thank you for taking the time to hear and see us today. This case, as you probably understood from the briefs filed, is about Oksana Bayou, who performed in a television show called The Nutcracker on Ice in 1994. That has been exploited to this day, but she's not received any royalties. That's the whole basis of the action, is trying to collect on the royalties. On appeal, we have six issues. I'm going to address them in a little bit different order than they are in the brief, just because I think the first one disposes of pretty quickly. That's issue number six. It's the 1927 sanctions against me. The district court completely disregarded controlling authority in that case, which is Whiting v. Laquera, 187, F3, 317, 323, 2nd Circuit, 1999. Under Whiting, my notification that I was withdrawing because of the conflict of interest that the judge created should have allowed an immediate withdrawal and no sanctions, but the judge refused to let me withdraw and forced me to One is our attempts at 4181 dismissals. Now, I attempted over the course of almost two years to voluntarily dismiss this case four times. Without prejudice. Without prejudice, correct, yes. Why wouldn't you agree to do it without prejudice to the California case, so that you could not bring a new suit in New York? Because they were willing to let you do it without My client, the California counsel, advised that they wouldn't accept that, so I was stuck with without prejudice in New York. That was my only option. They didn't believe that NBC would hold to that in California, and as has been seen in California, NBC is asserting res judicata in the California case. Well, of course it has to at this point, because there is no, I mean, there is the dismissal with prejudice here, but you've appealed that, so they need to point out, it's quite reasonable of them to point out that this action has been adjudicated here. I think it can happen both ways. The trial court found that you and your client asserted claims based on a written agreement for over a year after you realized that there was no written agreement. Is that correct? Well, I don't think that's completely correct, because there was a judicial admission by Ms. Talbert from NBC, I believe on May 7th of 2014, where she said that she hadn't been able to find a written agreement, but being a lawyer who practices in the entertainment industry, I still find it shocking that a big company like NBC could possibly perform a show and not have a written agreement with the star. Well, but the finding is that once you learned that there was no written agreement, whether that was surprising or not, that you continued to assert claims based on a written agreement when you knew there wasn't one. No, Your Honor, what I'm saying is that's the representation that they made, that there was no written agreement. Custom and practice in the industry would not indicate that there would be no written agreement. Your client produced no written agreement herself, yet she would have been party to one? Am I correct in that? She should have had a written agreement, yes, Your Honor. You're saying that we ought to still infer, it's inferrable from the nature of the industry that there was a written agreement, even though neither NBC was able to produce one and your client wasn't able to produce one? My client was a minor at the time. She had nothing. The industry, you would have a written agreement. It's impossible . . . In your position today, was there a written agreement or not? As pled in California, I have to agree with what they've gone with in California, which is the pleading that it's an implied-in-fact contract. Do I personally believe there was no written agreement? No, I think there had to be a written agreement. It's probably lost. It's referenced in two of NBC's contracts that there is a written agreement. And so that means that the NBC lawyers made a mistake? There was no written agreement? When they referenced that there is a written agreement? The references to royalty payments that might be due, I think the reference is a little less clear than you're making out. But in any event, this demonstrates one of the problems ensuing in 2014 on something that happened in 1994, I think. It's true, Your Honor, except that on audiovisual works, participations generally carry on for the term of copyright. So you're never quite outside the statute of limitations. You're only limited in how far you can go back on that royalty claim, depending on which jurisdiction. We have an issue also about the copyrightability of your client's actual performance, as opposed to the recording of it. Could you address that, whether it's separable from the recording and the rights in the recording? Well, I believe Judge Forrest raised that issue, that my client's choreography was recordable for copyright purposes. And I believe that was Judge Forrest who raised that issue. My client did not file a copyright claim, did not file a copyright infringement or a copyright ownership claim. But the nature of the claim, as we've been discussing also copyright preemption, the nature of the claim is such that it seems legitimately preempted by the Copyright Act. But as Judge Forrest decided, I believe she said there was a substantial question whether the claims are subject to complete preemption, and that's at page twenty-eight of our brief. Based upon that standard, that should have been a remand. So if we were to grant you leave to amend right now in this action, what would you do? We would file the amended California complaint. And pursue that here in New York? Is that what you're saying? What do you mean? If you said, if you granted us leave to amend, we would file the amended California complaint, the second California complaint which is currently being litigated in California. So you want to proceed in parallel litigations in California? No. Our objective is to dismiss without prejudice and let everything be resolved in California. That has been the objective for almost two years. All right. You've saved some time for rebuttal. We'll hear from the other side. May it please the Court. My name is Andrew Jacobs, and I'm counsel for Defendant Appellee NBC Universal Media, LLC. This Court should affirm the District Court's decision in its entirety for four reasons. First, the District Copyright Act preempts Bayoulle's claims, both giving rise to jurisdiction in this action and mandating that those claims be dismissed. Second, the District Court properly denied Bayoulle's attempts at voluntary dismissal without prejudice, both as a matter of law under Rule 41A1 and on application of the Zagano factors under Rule 41A2. Third, the District Court's denial of Bayoulle of leave to file a fifth amended complaint in this action was a proper exercise of her discretion because that relief was not requested, amendment would be futile, and in light of Bayoulle's bad faith conduct in this litigation. Finally, sanctions against Bayoulle's counsel under Section 1927 were appropriate in this case in light of Mr. Markovich's ceaseless pursuit of obviously meritless claims. Turning first to preemption, under Briarpatch and the doctrine of complete preemption, the District Courts have jurisdiction over state law claims that are preempted by the Copyright Act because that act both preempts and provides an exclusive federal remedy for state law. In turn, the three claims asserted in the fourth amended complaint, unjust enrichment, conversion, and accounting, do in fact meet the requirements for preemption under Section 301 of the Copyright Act. As to the subject matter requirements, all of these claims arise from the nutcracker on ice, a motion picture and audiovisual work that is clearly of the subject matter of the copyright law. As to the general scope requirement, in all of Bayoulle's claims, liability hinges on NBC's alleged use and exploitation of the nutcracker on ice. There is no extra element in any of Bayoulle's claims that renders those claims sufficiently different from a copyright infringement claim to survive preemption, especially under this Court's restrictive view of what constitutes an extra element. Moving from dismissal to dismissal without prejudice, under Rule 41A1, a plaintiff may only unilaterally dismiss a case by notice until a defendant has served his or her answer in a case. And indeed, there is no dispute that NBC filed its answer in October of 2014. After that point, Bayoulle had no right to unilaterally dismiss this case by notice, and the District Court properly rejected her attempt to do so. Under Rule 41A2, Bayoulle's motion for voluntary dismissal without prejudice was also properly denied under the Zagano factors. Bayoulle was on notice concededly by no later than May of 2014 that there was no written contract at issue in this case that would entitle her to royalties on the nutcracker on ice. That seems to be disputed, whether there was a written contract, whether she was aware of it. Well, I think the… Counsel suggests that he still thinks perhaps there is a written agreement. So could you address that? Sure. First, I think we should take the allegations of the complaint at their word. In paragraph 3 of the complaint, Bayoulle expressly alleges that there was no written performance agreement. Beyond that, any such agreement as referenced in the nutcracker agreement, which is attached to the complaint, would have been between Bayoulle and a third party. And that nutcracker agreement, which is attached to the complaint, contains a representation of warranty from the third party on ice productions that any rights were to any appearances by Bayoulle had already been obtained. So not only does Bayoulle already allege that… Is it likely in the industry for this kind of a relationship not to have a written contract? Whatever contract could have existed, in this case entitling her to royalties, would have been between the physical production company and the talent, Bayoulle. And not with NBC? That is correct. As the nutcracker VHS agreement, which is attached to the complaint, expressly states. Again, however, Bayoulle alleges that she was on notice no later than May 2014 that there was no written contract. And instead of seeking voluntary dismissal without prejudice at that time or seeking to amend her complaint, as the district court sets forth, she litigated on a theory of written contract for over a year. She engaged in written discovery. She filed a second amended complaint and a third amended complaint, still alleging that a written contract existed over a year after May 2014. Then, of course, she commenced the California action on an entirely inconsistent theory and refused to stop the New York action, dismiss that case with prejudice, even after we at NBC reasonably offered to stipulate not to assert claim preclusion or race judicata as a defense. I go through all this now because it shows not only that Bayoulle was not diligent in bringing the motion for dismissal without prejudice, but that she was unduly vexatious during that time, both of those being factors under the Zagano test for dismissal without prejudice. Could you turn briefly to the substantive argument that your adversary makes about whether NBC is arguing for the creation of a no-write zone in performance? Sure. I think that there are really three answers to that. There are other parties, other claims, and other times that Bayoulle could have brought a claim, simply because certain of the claims asserted against NBC Universal are preempted by the Copyright Act That does not mean that all conceivable claims against NBC Universal or a production company were preempted. It doesn't mean that there are other parties from whom she could obtain recovery. And, of course, most importantly, it means that there were better times to seek recovery for alleged failure to receive royalties earlier than 20 years before the performance had already taken place. You would say there are protections available to a performer who is recorded unbeknownst to her or just in the performance. It could have been asserted earlier and against different parties. Yes, Your Honor, that's correct, as we set forth in our brief. Turning from dismissal without prejudice, well, actually, really quickly on dismissal without prejudice, not only do the vexatiousness and diligence factors weigh against Bayoulle here, also the stage of the proceedings factor and the duplicative expense of re-litigation also weigh in favor of NBC Universal. On the stage of the proceedings, we've briefed over five motions for judgment on the pleadings or dismissal between California and New York at this time. We've engaged in significant discovery. There's been significant third-party discovery. And we've made numerous court appearances, myriad court filings, all of which advance the case pretty far forward. Go ahead, please. And you go ahead. And am I right in thinking that if we were to affirm Judge Forrest's dismissal with prejudice, that you would proceed on behalf of NBC with a res judicata defense in the California lawsuit? Yes, Your Honor. In fact, we already have moved for dismissal with prejudice and obtained that relief on res judicata grounds in California District Court. That decision is on appeal in the Ninth Circuit presently. Before you run out of time, just turn to sanctions. How do you respond to the argument that for two years, counsel tried to dismiss the case? Well, the dismissal that Mr. Markovich sought was dismissal without prejudice. And no later than September of 2015, we had offered a very reasonable compromise solution where we would proceed only in California, his preferred forum, and would not assert res judicata or claim preclusion defenses there. The only reason not to agree to that relief, as an attorney was well within his obligations to explain to his client, the only reason not to do that would be to reassert the claims that are being asserted in California, again in New York, to preserve that right. And that was the motivating factor for his not agreeing to that compromise solution. We should not reward that behavior with special treatment or an ability to amend the complaint for bearing from sanctions, because he had the complete ability at the time to avoid a host of litigation. What he says is that, first of all, the California counsel advises against it on the theory that  it might renege on that commitment in California. What would its remedy have been had that scenario come to pass? There could be judicial remedies in terms of some sort of estoppel defense if we had attempted to assert res judicata. The stipulation that we would have entered into not to assert that defense could have been worded in such a way as to provide either a separate action as relief or somehow to work that out with the judge in California to simply block the assertion of that defense. You would say it would have been adequately enforceable, that commitment? Yes, Your Honor. The language was subject to discussion. That's correct. The sole purpose we had in making that offer, it was not a particular mechanical procedure. It was the ultimate end goal of proceeding to finality on the merits in California and putting an end to the New York litigation. Exactly how that would be done, whether it would be a dismissal without prejudice but subject to certain conditions, that sort of thing, we hadn't proceeded that far because that offer was rejected out of hand. I'm just about out of time if there's other questions. Thank you very much. Thank you. We'll hear the rebuttal. A couple of important points here. First of all, opposing counsel keeps going into a period prior to the new case number being assigned to this action. My understanding of the law is under 1927, it can't go back prior to that case number being assigned. So everything that he's talking about is irrelevant to determining whether I should have been sanctioned. It only starts from the new case number. What happened from the new case number is . . . What's your authority that we should look to case numbers over the substance of the continued course of conduct? We were in state court, correct? Yeah. That's where I submitted the proposed amended complaint to NBC for approval for filing. They approved that I file that amended complaint. Upon filing that amended complaint, NBC then sought to remove. They removed under the old case number. I filed a 41A1 voluntary dismissal, which I believe is valid, because of Sheldon. Judge Forrest disagreed with that. NBC then had to file under a new case number. Then they filed an answer. I had filed another 41A1 dismissal. They never filed a Rule 11 motion against me on the complaint that I filed. So I wasn't given the 21-day safe harbor, and I was trying to dismiss anyway the complaint. That was the whole purpose. Why wouldn't you dismiss with prejudice other than to the California action? I'm sorry, Your Honor? Why wouldn't you agree to dismiss with prejudice without prejudice to the California case? Okay. You say that California counsel advised you not to. That's the reason? California counsel and the client were against it with prejudice because they didn't believe NBC would hold up to their act. You tried to negotiate the language so that you would have an ironclad language? We had several discussions with NBC on this. But an example of what happened next. The only reason to refuse that offer would be to preserve your right to sue again in New York. Which is what they were trying to avoid. Well, that was not the intent of my client, to sue again in New York. They wanted the case to remain in California. But, Your Honor, NBC conceded to California law applying in the California action. And then subsequently, when these motions were heard before Judge Forrest, disagreed and said now New York law has to apply. So they reneged on the California law, which they accepted in the California action. Thank you. Thank you.